**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **DANNY TREY CROSSLAND** | **CASE NO. 6:25-CV-00758 SEC P** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **BRAD CONN, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

**REPORT AND RECOMMENDATION**

Before the court are the original and amended civil rights complaints filed pursuant to 42 U.S.C. § 1983 by Danny Trey Crossland ("Crossland"), who is proceeding pro se and *in forma pauperis* in this matter. Docs. 1, 11. Crossland is incarcerated at the BB Rayburn Correctional Center in Angie, Louisiana, but his claims arise out of an incident that occurred while he was incarcerated at the Vernon Parish Sheriff's Office in Leesville, Louisiana. This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court. For the following reasons, it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief may be granted.

## I. BACKGROUND

Crossland alleges that at the time he was booked into the Vernon Parish Jail in June 2023, he informed the staff that he was disabled and handicapped due to his neurological disease. Doc. 1, p. 3. He argues that he should have been put in the Americans with Disabilities Act ("ADA") compliant cell but instead was put into general population where he was attacked and injured. *Id*. He also had a difficult time using the bathroom and shower because they were not handicapped accessible. *Id*. His original complaint names Vernon Parish Sheriff's Office ("VPSO") and Warden Conn as defendants. *Id*.

Crossland's amended complaint centers around the defendants' failure to provide an ADA compliant dorm with handicap grab-bars in the bathroom or shower or a chair in the shower. Doc. 11, p. 2. He also adds Vernon Parish Sheriff Sam Craft and VPSO Medical Supervisor Heather Patterson as defendants, asserting that they are both responsible for failing to properly train, instruct, or supervise their employees as it pertains to ADA policies and standards. Doc. 11. He complains that his multiple requests for a wheelchair or walker to Patterson were ignored. Doc. 11-2, p. 2.

## II. LAW & ANALYSIS

### *A. Frivolity Review*

Crossland has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (failure to state a claim).

### *B. Section 1983*

Title 42, United States Code, Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. *See Lugar v. Edmondson Oil Co., Inc.*, 475 U.S. 922, 937 (1982).

### *C. Failure to Accommodate*

Title II of the ADA, which applies to public entities such as VPSO, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (citations omitted). To state a claim under Title II of the ADA, a plaintiff must demonstrate: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)). A qualifying disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

First, although Crossland avers that he suffers from a "neurological disease," he has not alleged any facts showing that these conditions render him disabled within the meaning of the

ADA. "It is well established that [m]erely having an impairment . . . does not make one disabled for purposes of the ADA." *Hale v. King,* 642 F.3d 492, 501 (5th Cir. 2011) (internal quotation marks omitted). Absent pleading facts showing how his claimed impairments substantially limit the performance of a major life activity, plaintiff fails to state a claim for relief. *See id.; Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (explaining that PTSD, standing alone, "is not necessarily a disability contemplated by the ADA" and that "[t]he statute requires an impairment that substantially limits one or more of the major life activities"); *Willis v. Catahoula Corr. Ctr.*, No. 09-CV-1510, 2010 U.S. Dist. LEXIS 67218, 2010 WL 2710405, at *4 (W.D. La. May 14, 2010) ("To obtain relief under the ADA, a plaintiff must demonstrate that his condition significantly impairs a major life activity, and plaintiff has made no such demonstration.").

More significantly, Crossland has not pleaded facts indicating that defendants intentionally discriminated against him based on any qualifying disability. Crossland asserts that defendants denied him medical accommodations. "The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (internal quotation marks omitted); *see Whetstone v. Hall*, NO. 4:17-158-JMV, 2018 U.S. Dist. LEXIS 10194, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)) ("Neither [the ADA or RA] covers the mere absence or inadequacy of medical treatment for a prisoner."). With respect to plaintiff's allegation that defendants denied him certain housing, he does not plead facts showing that such decisions had any connection to his alleged disabilities, or that defendants intentionally treated him differently because of a disability. *See, e.g., Back v. Tex. Dep't of Criminal Justice Corr. Inst. Div.*, 716 F. App'x 255, 258 (5th Cir. 2017) (affirming dismissal of prisoner's ADA claim where he did not allege defendant intentionally discriminated against him due to his

disability); *Hay*, 470 F. App'x at 418 (affirming dismissal of prisoner's ADA and RA claims where he "[did] not allege, much less explain, how his alleged disabilities made it more difficult for him to access the benefits of TDCJ's services [i.e., dentures,] or gave him less meaningful access to those services"). Without specific facts supporting the claim, i.e., facts showing that the denial of a service was *because of* his alleged disabilities, Crossland fails to establish the third element of an ADA claim—that defendants denied him a service with subjective intent to discriminate based on his alleged disabilities. *See, e.g., Bruce v. Little*, 568 F. App'x 283, 286 (5th Cir. 2014) (affirming district court's dismissal of prisoner's ADA claim where prisoner "failed to allege any facts supporting an ADA claim"); *Brigham v. Tex. Dep't of Criminal Justice*, Civil Action No. 1:15-CV-440, 2016 U.S. Dist. LEXIS 135674, 2016 WL 5719698, at *7 (E.D. Tex. Aug. 29, 2016) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)) (dismissing prisoner's ADA claim because he had not pleaded facts establishing any of elements and the court should not "'strain to find inferences favorable to plaintiff' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions'").

***D. Medical Care***

To the extent plaintiff raises a claim of deliberate indifference related to the purported denial of medical care, i.e., a wheelchair or walker, this claim also fails. Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner

advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs"). Deliberate indifference "is an extremely high standard to meet," *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks omitted), and requires satisfaction of both an objective and a subjective component, *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating that prison official is not responsible for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

"[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability

only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir, 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Crossland's claim against Medical Supervisor Heather Patterson is based on the allegation that she repeatedly ignored his requests for a wheelchair or walker. While Crossland may have desired a wheelchair or walker, his disagreement with Patterson's medical decision not to prescribe one fails to state a viable constitutional claim. *Norton*, 122 F.3d at 292; *Gobert*, 463 F.3d at 346; *see, e.g., Wilson v. McGinnis*, 651 F. App'x 263, 264 (5th Cir. 2016) ("[Prisoner's] argument that [defendant] was deliberately indifferent because she did not order a permanent bottom bunk restriction is unavailing, because it represents a mere disagreement with [defendant's] methods to treat his medical problem."); *Sulak v. Beck*, Civil Action H-18-0630, 2018 U.S. Dist. LEXIS 199126, 2018 WL 6173723, at *3 (S.D. Tex. Nov. 26, 2018) (noting that prisoner's claim that "medical personnel failed to prescribe medical shoes or black work boots" constituted a disagreement with medical care). At best, Crossland's claim may amount to one for negligence, which does not rise to the level of a constitutional violation. *See, e.g., Johnson v. Talley*, 243 F. App'x 10, 11 (5th Cir. 2007) (explaining prisoner's contention that defendant "failed to provide him with a knee brace, cane, or walking stick . . . alleges, at most, a difference in opinion or a malpractice claim concerning [prisoner's] medical treatment and thus does not establish an Eighth Amendment violation"); *Holland v. Patel*, 236 F. App'x 136, 137 (5th Cir. 2007) ("[Prisoner's] assertion that he required a cane and that [defendant] wrongfully took his away amounts to no

more than a mere disagreement with the medical treatment he received or, at most, a claim for negligence and was thus properly dismissed.”).

## III. CONCLUSION

Therefore,

**IT IS RECOMMENDED** that Crossland’s civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

**IT IS FURTHER RECOMMENDED** that plaintiff’s motion to appoint counsel (doc. 12) be **DENIED** as **MOOT**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party’s objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers this 8th day of September, 2026.

THOMAS LEBLANC
UNITED STATES MAGISTRATE JUDGE